United States District Court
District of Minnesota
Cr. No. 02-82 (JMR/FLN)
Civil No. 06-1397 (JMR)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>TYRONE POWELL CRAWFORD<br><br>Petitioner. | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 |

This is the United States' response in opposition to the Petitioner's pro se motion of April 6, 2006, in which he argues that his sentence should be vacated, set aside, or corrected under 28 U.S.C. § 2255.

## PROCEDURAL HISTORY

On October 15, 2002, the Petitioner, Tyrone Powell Crawford ("Crawford"), pleaded guilty to one count each of mail fraud, wire fraud, money laundering, and two counts of forged securities violation. He pled straight up, without the benefit of a plea agreement. He was subsequently sentenced to 120 months imprisonment on February 19, 2004.

Crawford appealed his sentence, challenging the district court's findings regarding sentencing enhancements. Although the appeal was based on the Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004), the Eighth Circuit reviewed the

sentence for error under United States v. Booker, 543 U.S. 220 (2005). The Eighth Circuit affirmed the sentence, finding, under a plain error review, that Crawford had not demonstrated a reasonable probability that he would receive a more favorable sentence absent the Booker error.

Crawford's Motion

Crawford now moves the court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, basing this claim on ineffective assistance of counsel. He states that his counsel was ineffective because counsel failed to argue on appeal that: 1) the Court violated Rule 11 of the Federal Rules of Criminal Procedure and 2) the plea was involuntary. In addition, Crawford alleges the District Court miscalculated his offense level by "double counting" sentence enhancements and failed to give him a point reduction for acceptance of responsibility. He argues his counsel was ineffective for failing to raise these issues on appeal as well.

In order to show that his counsel was ineffective, Crawford must show that his counsel's actions fell below an objective standard of reasonableness and that any unreasonableness resulted in prejudice to him. Strickland v. Washington, 466 U.S. 668, 694 (1984); Hill v. Lockhart, 474 U.S. 52, 56 (1985)(finding that the Strickland test for ineffective counsel is applicable to guilty pleas). Under Strickland, there is a presumption that defendant received competent representation and that the challenged decisions

were permissible tactical choices made by counsel. Strickland, 466 U.S. at 689. The Supreme Court noted that it is not necessary for a court to address both components if the defendant makes an insufficient showing in one. Id. at 697; see Sanders v. Trickey, 875 F.2d 205, 211 (8th Cir. 1988).

In the appeal context, appellate counsel does not have a duty to raise "every non-frivolous claim on appeal". Reese v. Delo, 94 F.3d 1177, 1185 (8th Cir. 1996); Sidebottom v. Delo, 46 F.3d 744, 759 (8th Cir. 1995). Moreover, counsel has discretion to abandon losing issues on appeal. Harne v. Trickey, 895 F.2d 497, 500 (8th Cir. 1990). To show that his attorney was deficient in failing to raise the claim on appeal, Crawford must show a reasonable likelihood that, but for his attorney's error, the result on appeal would have been different. Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987).

Ineffective Counsel: Rule 11

Crawford argues that his counsel's performance was deficient because counsel did not appeal an alleged Rule 11 violation. Crawford claims that during the Rule 11 colloquy the District Court impermissibly entered into plea negotiations with the defendant. Also, he alleges that the Court misinformed him on what the maximum and minimum sentences were, which led to an involuntary plea.

Crawford is wrong. There is nothing in the record during the plea colloquy which even remotely indicates that the Court became

engaged in plea negotiations. It should also be noted that the defendant entered a "straight plea", Guilty Plea Transcript (GPT), p 14. There was no agreement with the United States. Because there was no negotiated plea, the Court could not have become engaged in negotiations which did not occur.

Because Crawford has been unable to demonstrate any basis for his attorney to appeal on this issue, he is unable to meet his burden under the first prong of Strickland.

Crawford is also unable to satisfy the second prong of Strickland, that he was prejudiced by any deficient performance by his counsel. By his own admission in his present motion, Crawford had a long standing desire to plead guilty. Crawford Motion at 9. See also GPT 6,11. Therefore, any supposed Rule 11 violation here did not prejudice Crawford's case because he was willing to plead guilty before the colloquy.

Crawford also claims that his counsel was ineffective for not appealing an "involuntary plea" - that his plea was supposedly based upon "misinformation" about his possible sentence. Again, the record contradicts the defendant here. The Court explained to the defendant the maximum possible sentences under each count. GPT, 16. During the guilty plea hearing, both the Court and counsel went to great lengths to make sure that Crawford understood that what he was told at that time regarding Sentencing Guidelines calculations could easily change. GPT 14-22. It is true that

based upon information known by the parties at the time of the plea, the Court estimated a sentence range of 24-30 months. GPT 17-21. However, as the Court specifically stated "And once again, I have to base it on what I have now". GPT 21. The Court told Crawford, "I want to give you my best understanding right now of what the sentence will be but that is going to be subject to some variation depending on some background information that I don't really have." GPT 15. Because this was a straight up plea, and there were no agreed upon Guidelines calculations, the Court stressed the uncertainty of the sentence, other than the statutory maximums. See e.g. GPT, 18. Later, the Court asked Crawford if he understood that if some of the current information was wrong, the numbers used to calculate the sentence would change. (Id. at 21.) Crawford replied that he knew this would happen in that event. (Id.) The Court also asked Crawford, "...you understand that I will not, and cannot, guarantee that sentence?", and Crawford responded, "yes". (Id. at 21-22.)

His own counsel asked Crawford several times if he understood what his sentence might be and that it could change. (Id. at 19-20.) Crawford's counsel asked him if they had discussed together the different possible sentences he was facing. He also asked Crawford whether or not he had any questions about what the Court had said or what he (counsel) had said. Crawford responded, "no".

(Id.) The record shows that Crawford had a clear understanding that his Guidelines range was uncertain and easily could change.

Crawford has no legal argument here because a defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences. A misimpression about the applicable Guidelines range or sentence will not equate to an involuntary plan as long as the Court informed the defendant of his maximum possible sentence. Roberson v. U.S., 901 F.2d 1475, 1478 (8th Cir. 1990); U.S. v. Harris, 2003 WL 22143733 (D.Minn 2003) (Rosenbaum, Chief Judge). The Court did inform Crawford of the maximum possible sentence under each of the counts he pled to. GPT 16. The Court on numerous occasions during the plea colloquy stressed to the defendant the uncertainties of the possible applicable range. Crawford cannot show that his counsel's performance was deficient because the issue was not meritorious on appeal.

Ineffective Counsel: Failure to Appeal Alleged Misapplication of the Sentencing Guidelines

Crawford claims that there are two sentencing Guideline issues which his counsel should have appealed. Both are frivolous arguments. First, he claims that the Court impermissibly double counted by applying the two point enhancement for Obstruction of Justice to his failure to return the $100,000, which money was also the subject of a money laundering count to which he pled guilty.

Count 3 of the superseding indictment charged Crawford with engaging in money laundering on February 7, 2002 when he withdrew $100,000 in cash from a bank to conceal its location. The Court, at sentencing, applied U.S.S.G. 3C1.1, Obstruction of Justice, not for Crawford's actions on February 7, 2002 in trying to disguise the location of the currency on that date, but for two separate reasons. First, because both in the trial of his co-defendant Antoinette Florez where he testified as a witness for the defense and afterward as part of his own sentencing, the defendant lied about the location of the $100,000. Second, because he continued to hide the $100,000 long after the February 7, 2002 date in the money laundering count. See e.g. Defendant's testimony on behalf of his co-defendant. Trial Transcript Volume I, October 17, 2002, pages 118-124. At sentencing, this Court stated:

> Now, the PSI did not apply that enhancement [obstruction of justice]. The Court is of a mind to do so. The defendant's account of what happened to the missing $100,000 is clearly false. It is designed to mislead, to obstruct, and to compound the wrong which he has committed. I recall it very well. He said he left it on top of the refrigerator, and then it was gone. He reported it the same way as he would say what his dog had for lunch yesterday. I have never lost $100,000. I don't expect to. But in this Court's job, it is often called upon to consider credibility. I found that statement both incredible in the sense that it was beyond imagining, and secondly, that it was not credible. This man, ah, there is strong suggestion in the form of information from an inmate, which was supplied to the Court, that this money was placed deliberately out of control of the Court, and deliberately out of control of any victims. But the reality is is that he has made no effort, none whatsoever, to explain another loss, in this case, of $100,000. It is a willfull concealment, and it

> continues to this moment, and to this hour. Therefore, on the basis of the concealment of funds, which continues to this time, it is appropriate to apply a two point enhancement under 3C1.1. (emphasis added)

Sentencing Transcript, (ST) May 8, 2003, pages 13-14.

The "account" which the Court referred to was defendant's testimony as a defense witness in the Florez trial. The Obstruction of Justice enhancement is for false statements to this Court in attempting to continue to conceal the $100,000 and keep it out of control of the Court and away from the victims. Sentencing Transcript 13-14. There was no double counting here.

The defendant also argues that he should have received credit for acceptance of responsibility, and that there was an appealable issue here as well. Again, the sentencing transcript clearly sets forth the Court's factual basis for not applying acceptance of responsibility. See ST 12, 15-17, 22-23 (May 8, 2003). While the defendant pled guilty, the Court found that his conduct was inconsistent with acceptance of responsibility and outweighed the one fact in his favor, that he pled. As the Court noted:

> The defendant has been entirely inconsistent [with acceptance of responsibility]. While he has not chosen to take a, ah, lie detector test, he need not do so. He has done absolutely nothing to assist in the recovery of the $100,000 of green money cash, which he stole. He knows where it is, I'm absolutely convinced of it, and this man will do nothing whatsoever to assist. He's simply going to do his time and come back and pick up his green money. This Court does not consider that acceptance of responsibility.

Sentencing Transcript 16-17 (May 8, 2003). Again, appellate counsel is not required to raise losing issues on appeal. This issue would clearly have been a lost cause. A defendant is not entitled to a reduction for acceptance of responsibility merely because he pled guilty or merely because he recites "the appropriate litany of remorse". U.S. v. Mohamed, 161 F.3d 1132, 1136 (8th Cir. 1998). Significant here, the Eighth Circuit has noted that whether acceptance of responsibility was properly denied is a factual question which turns on the district court's credibility assessments. The lower court is accorded great deference because it is in a unique position to make this evaluation. As a result, the issue is reviewed for clear error. Id. This issue had no merit for appeal.

CONCLUSION

For all the above reasons the defendant's 2255 petition should be denied.

Dated: June 6, 2006

Respectfully submitted,

RACHEL K. PAULOSE
United States Attorney

s/James E. Lackner
BY: JAMES E. LACKNER
First Assistant U.S. Attorney
Attorney ID Number 59298